UNITED STATES DISTRICT COURT

OF THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

FAYGE GROSS,                                    Civil Action No.:

               Petitioner,

                                 PETITION

     -against-

HERSCH GROSS,

               Respondent,

-----------------------------------------------------------------X

Petitioner, LEAH GROSS, by her undersigned attorneys, Law Office of Menachem White, PLLC by Menachem White, Esq., hereby alleges and states as follows:

1.     This Petition is brought by the natural mother of the infant, , to obtain relief pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention") and the implementing legislation within the United States, including the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C.A. §§ 11601 et seq., and New York's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), DRL §§ 75(d), 77 et seq.

2.     Prior to Respondent's wrongful retention of the son, Ahron Gross, Date of Birth October 28, 2009, in New York in violation of the Convention, Ahron Gross, Date of Birth October 28, 2009, habitually resided with his mother, Petitioner FAYGE GROSS, in Manchester, England.

3.     Prior to Respondent's wrongful retention of Ahron Gross, Date of Birth October 28, 2009 in New York, Petitioner possessed valid rights of custody and was exercising rights of custody over Ahron Gross, Date of Birth October 28, 2009 in Manchester, England.

4.    4. Petitioner hereby seeks an Order pursuant to the Hague Convention, ICARA and UCCJEA directing the return of Ahron Gross, Date of Birth October 28, 2009 to Petitioner, together with the provisional relief requested herein and such other and further relief as may be granted by the court.

## RELEVANT STATUTES

5.    The Hague Convention went into effect within the United States on July 1, 1988, and applies to disputes involving child abduction and the wrongful retention of children from inter alia England.

6.    The objects of the Hague Convention are:

    a.  To secure the prompt return of children wrongfully removed or retained in any Contracting State (Article 1(a)); and

    b.  To ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States (Article 1(b)).

7.    The United States implemented the Hague Convention by enacting ICARA, 42 U.S.C.A. §§ 11601 et seq. in 1988. Under § 11601(b)(4) of ICARA, federal district courts are authorized to determine the merits of wrongful abduction and retention claims arising under the Hague Convention, but are not authorized to consider the merits of the underlying custody dispute between the parties, if any.

8.    The UCCJEA was adopted by New York in 2002.

9.    The object of the UCCJEA is to "provide an effective mechanism to obtain and enforce orders of custody and visitation across state lines." DRL § 75(2).

## JURISDICTION

10.     10. This court has subject matter jurisdiction over Petitioner's claims pursuant to 42 U.S.C.A. § 11603(a) of ICARA, which provides that the courts of the States and the United States district courts shall have concurrent original jurisdiction over actions arising under the Convention.

11.     This court has supplemental subject matter jurisdiction over Petitioner's UCCJEA claim pursuant to 28 U.S.C.A. § 1367.

12.     This court has personal jurisdiction over Respondent, as, upon information and belief, Respondent resides within and is present within the jurisdiction of this court.

## STATEMENT OF FACTS

A. The Parties

13.     The Petitioner, FAYGE GROSS, was born in England, and is a citizen of England.

14.     The Petitioner resides at 17 Leicester Road, Salford M74AS, Manchester in England.

15.     Upon information and belief, the Respondent, HERSCH GROSS, was born in Manchester, England, and is a citizen of England.

16.     Upon information and belief, the Respondent currently resides at 168 Ellery Street, Brooklyn New York 11206.

17.     The Petitioner and Respondent were married in the city of Salford, England on February 28, 2002. Annexed hereto as **Exhibit A** is the Marriage Certificate of the parties.

18.     Petitioner and Respondent are the natural parents of the son, Ahron Gross, Date of Birth October 28, 2009, who was born in Salford, England on October 28, 2009. Annexed hereto as **Exhibit B** is the Birth Certificate of the child.

B. Ahron Gross, Date of Birth October 28, 2009's Habitual Residence in England prior to Respondent's Wrongful Retention of the Child

19.     The Petitioner took Ahrom Gross to the United States on April 6, 2022 for a trip and the Respondent and the child were to return on April 27, 2022 to England with the child. Annexed hereto as **Exhibit C** are emails between the parties about Ahron's and the Respondent's return to England.

20.     From March, 2022 until the wrongful retention of Ahron Gross, Date of Birth October 28, 2009 by Respondent, Ahron Gross, Date of Birth October 28, 2009, habitually resided with Petitioner in Manchester, England.

21.     The Hague Convention applies where a child under the age of sixteen (16) years has been removed from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child. Convention, Article 4.

22.     Ahron Gross, Date of Birth October 28, 2009, is now fourteen (14) years old.

23.     Prior to the wrongful retention of Ahron Gross, Date of Birth October 28, 2009, by Respondent in the State of New York commencing in April, 2022, Ahron Gross, Date of Birth October 28, 2009, was a habitual resident of England within the meaning of the Hague Convention, residing with his natural mother in Manchester, England.

C. Petitioner's Exercise of Rights of Custody over Ahron Gross, Date of Birth October 28, 2009, Prior to Respondent's Wrongful Retention of the Child

24.    Petitioner has valid rights of custody over Ahron Gross, Date of Birth October 28, 2009, under English law.

25.    Petitioner was exercising valid rights of custody over Ahron Gross, Date of Birth October 28, 2009 in Salford, England, within the meaning of Articles Three and Five of the Hague Convention, prior to the wrongful retention of Ahron Gross, Date of Birth October 28, 2009 by Respondent in New York commencing in April. 2022.

D. Respondent's Wrongful Retention of Ahron Gross, Date of Birth October 28, 2009

26.    Petitioner agreed to allow Ahron Gross, Date of Birth October 28, 2009 to visit with Respondent in the United States in March, 2022, with the agreement with Respondent that Ahron Gross, Date of Birth October 28, 2009, would return to Petitioner in Manchester, England in April, 2022.

27.    Respondent has wrongfully retained Ahron Gross, Date of Birth October 28, 2009 in the United States in violation of the Hague Convention, and has failed to return Ahron Gross, Date of Birth October 28, 2009, to Petitioner in the first week of April, 2022 as agreed, notwithstanding Petitioner's requests.

28.    32. Respondent continues to wrongfully retain Ahron Gross, Date of Birth October 28, 2009, in the United States, despite requests and efforts on Petitioner's part to have Ahron Gross, Date of Birth October 28, 2009 returned to England.

29.    Respondent also continues to wrongfully obstruct Petitioner's access to Ahron Gross, Date of Birth October 28, 2009 in New York.

30.    Petitioner filed an Application with the Central Authority of the Official Solicitor's Office in Manchester, England on August 5, 2022, requesting that the Central Authority act on Petitioner's behalf to secure the return of Ahron Gross, Date of Birth October 28, 2009, to Petitioner in England. Annexed hereto as **Exhibit D** is the application of the Petitioner.

31.    The International Child Abduction and Contact Unit of the Official Solicitor's Office in Manchester, England issued a letter directed to the United States Department of State, Office of Children's Issues, on July 6, 2022, transmitting Petitioner's Application. Annexed hereto as **Exhibit E** is the letter sent to Respondent from the United States Department of State.

32.    Respondent has frustrated Petitioner's efforts to secure the return of Ahron Gross, Date of Birth October 28, 2009 to England, by relocating without providing notice to Petitioner of Respondent's or Ahron Gross, Date of Birth October 28, 2009.

33.    Respondent has further acted to obstruct and restricting Petitioner's telephone communications with Ahron Gross, Date of Birth October 28, 2009, including by recently disconnecting the telephone number Petitioner was using to communicate with Ahron Gross, Date of Birth October 28, 2009.

34.    Upon information and belief, Respondent and Ahron Gross, Date of Birth October 28, 2009, are currently residing at 168 Ellery Street, Brooklyn New York 11206, in the State of New York, County of Kings.

35.    Pursuant to Article 12 of the Convention, [w]here a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

36.     Less than one year has elapsed from the date of the Respondent's wrongful retention of Ahron Gross, Date of Birth October 28, 2009, beginning on March April 7, 2022.

37.     Respondent has wrongfully retained Ahron Gross, Date of Birth October 28, 2009 in the United States away from Ahron Gross, Date of Birth October 28, 2009's habitual country of residence, without Petitioner's consent or permission, and in violation of the valid rights of custody of Petitioner.

38.     Petitioner is also being denied access to her son in violation of the Hague Convention, in addition to Respondent's wrongful retention of Ahron Gross, Date of Birth October 28, 2009 in New York in violation of the Hague Convention.

REQUEST FOR ENTRY OF AN ORDER DIRECTING THE RETURN OF Ahron Gross, Date of Birth October 28, 2009 TO PETITIONER FORTHWITH

39.     Petitioner requests that the court enter an Order, pursuant to Article 12 of the Convention, directing that Respondent return Ahron Gross, Date of Birth October 28, 2009 to Petitioner's care and custody in Manchester, England forthwith.

## **REQUEST FOR EXPEDITED HEARING**

40.     Petitioner requests that an expedited hearing pursuant to Article 11 of the Convention and DRL § 77-g(3), take place concurrently in the interests of justice.

41.     44. Pursuant to 42 U.S.C.A. § 11603(c), Petitioner requests that Respondent shall be given notice of hearing pursuant to the New York Court Rules.

## PROVISIONAL RELIEF

42.    Pending further hearing in this court, it is requested that this court issue an immediate order prohibiting the removal of Ahron Gross, Date of Birth October 28, 2009, from the jurisdiction of this court, taking into custody for safe-keeping by the court all of Ahron Gross, Date of Birth October 28, 2009's and Respondent's travel documents (including passports and visas), and setting an expedited hearing on the Petiton for the Return of Child to Petitioner pursuant to 42 U.S.C.A. § 11604.

43.    Pending further hearing in this court, it is requested that this court issue an immediate order directing that the name of the child, Ahron Gross, Date of Birth October 28, 2009, be entered into the national police computer system in the missing person's section.

44.    Petitioner requests, for the well-being of the child, that Petitioner be given immediate access to Ahron Gross, Date of Birth October 28, 2009, pending further hearing in this court, including, but not limited to: (a) information regarding his whereabouts, (b) a telephone number at which he can be reached, and (c) regular access, via telephone, to Ahron Gross, Date of Birth October 28, 2009,

45.    Pursuant to Article 16 of the Hague Convention, Petitioner requests that this court stay any and all proceedings that Respondent may have commenced, or may commence in the future, before the courts of the State of New York or any other state or territory of the United States, concerning the custody of Ahron Gross, Date of Birth October 28, 2009, pending a determination under the Hague Convention of this Petition.

46.    Section 5(b) (Provisional Remedies) of ICARA provides, inter alia, that, in a proceeding under Section 4(b) for the return of a child, "No court exercising jurisdiction … may

... order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 42 U.S.C.A. § 11604.

47.     In New York, the UCCJEA is the source for statutory law governing, inter alia, the resolution of both domestic and international child custody disputes. DRL § 76-i(1) authorizes this court to order the appearance of the child and custodian together. Therefore, this court has the authority to order the immediate appearance of Respondent and of Ahron Gross, Date of Birth October 28, 2009 together.

48.     Furthermore, the father has violated English law by taking the child to the United States. Annexed hereto as **Exhibit F** are the laws of England.

49.     Furthermore, Petitioner requests that the court issue an Order to Show Cause, and direct that said Order be served immediately by United States Marshals Office on Respondent HERSCH GROSS, directing that Respondent appear before this court at the hearing along with Ahron Gross, Date of Birth October 28, 2009.

RELIEF REQUESTED

WHEREFORE, Petitioner FAYGE GROSS respectfully requests that the court:

a. grant Judgment in favor of Petitioner directing that Ahron Gross, Date of Birth October 28, 2009 be returned forthwith to Petitioner's care and custody in England, pursuant to Article 12 of the Convention; and

b. issue an immediate Order prohibiting Ahron Gross, Date of Birth October 28, 2009's removal from the jurisdiction of this court, pending the court's hearing and determination on this Petition, which Order shall temporarily restrain Respondent, and any person acting in concert with or participating with Respondent, from taking any action to remove Ahron Gross, Date of

Birth October 28, 2009 from the jurisdiction of this court pending a hearing and determination on this Petition; and

    c. issue an Order directing that Respondent surrender into the custody of this court Respondent's and Ahron Gross, Date of Birth October 28, 2009's travel documents (including passports and visas), pending a determination of this Petition pursuant to 42 U.S.C.A. § 11604; and

    d. direct that the name of the child shall be entered into the National Crime Information Center (NCIC) computer database in the missing persons section; and

    e. issue an Order directing Respondent to advise Petitioner's counsel and this court in writing of Respondent's and Ahron Gross, Date of Birth October 28, 2009's current address, current telephone number and other contact information to facilitate Petitioner's access to Ahron Gross, Date of Birth October 28, 2009, and that, pending a hearing and determination on the merits of the Petition, Respondent shall notify Petitioner's counsel and this court immediately of any change or contemplated change in such contact information; and

    f. issue an Order directing Respondent shall allow Petitioner access to Ahron Gross, Date of Birth October 28, 2009 for telephonic and personal visitation; and

    g. direct respondent to appear at this court with Ahron Gross, Date of Birth October 28, 2009 at an expedited hearing to show cause why Ahron Gross, Date of Birth October 28, 2009 should not be returned to Petitioner's care and custody forthwith pursuant to the Hague Convention, ICARA and the New York's UCCJEA; and

    h. issue an Order staying any proceedings in any Court in the State of New York or any other state or territory of the United States concerning the custody of Ahron Gross, Date of Birth October 28, 2009, as required by Article 16 of the Convention; and

i. grant such other and further relief as this court may deem just and proper, including but not limited to reimbursement of Petitioner's costs in this action, as well as Petitioner's attorneys' fees, pursuant to 42 U.S.C.A. § 11607(b)(3).

Dated:     March 1. 2023

              Woodmere, New York

_____

Menachem White, Esq.

Attorney for Petitioner

Law Office of Menachem White

4 Brower Avenue, Suite 3

Woodmere, New York 11598

(516) 504-4101



**United States Department of State**

*Washington, D.C.   20520*

July 6, 2022

Mr. Hersch Gross

████████████
████████████

Dear Mr. Gross:

We are writing to inform you that the Government of the United Kingdom has forwarded to us an application from Ms. Fayge Gross, who is seeking assistance under the Hague Convention on the Civil Aspects of International Child Abduction in returning Ahron Gross to the United Kingdom.

On July 1, 1988, the 1980 Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention) entered into force between the United States and the United Kingdom. The Hague Convention establishes a framework whereby a child who is habitually resident in one contracting country, and who has been wrongfully removed to or retained in another contracting country, may be promptly returned to the country of habitual residence so that the court there may resolve custody and access matters. The Hague Convention also establishes circumstances under which a court is not required to return a child to his/her habitual residence.

The Department of State, Office of Children's Issues, performs the functions of Central Authority for the United States under the Convention. Pursuant to Article 10 of the Convention, the Central Authority of the country where the child is located must "take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child." We write today to ask whether you are interested in working with Ms. Gross, and any professionals which you may find helpful such as an attorney, mediator, and/or social worker to facilitate the resolution of your family's conflict without engaging in litigation.

Please note that the Convention does not specifically address the issue of who should have custody of the child, but rather addresses the question of where custody should be decided. The Hague Convention's objective is to protect children from the harmful effects of wrongful removal or retention by establishing procedures to ensure their prompt return to the country of their habitual residence, where custody can best be decided, as well as to secure protection for rights of access.

For your convenience, our website at childabduction.state.gov offers information about the Hague Convention, its implementing legislation, and how the Hague Convention is implemented in the United States. We encourage you to review this information carefully. If you do not have access to the internet, please contact Ms. Nancy McGauvran at 202-485-6093. After reviewing the information, we ask you to advise Ms. McGauvran by July 22, 2022, as to when and how this matter will be resolved.

If we have not received your response by July 22, 2022, or if you elect not to return the child to the United Kingdom and/or come to some resolution that is mutually agreeable to you and Ms. Gross, then we, as the U.S. Central Authority, will be obligated under Article 7(f) of the Convention to continue processing the application and to facilitate the initiation of judicial proceedings by Ms. Gross to have a court in the United States determine Ahron's country of habitual residence and where custody should be decided. Please note that, as with all documents about your child held in State Department records, we may disclose any response to this letter to individuals or entities in accordance with U.S. law, including to Ms. Gross and/or her legal representative. Please do not hesitate to contact Ms. McGauvran if you have any further questions or need additional information.

We look forward to your favorable reply.

Sincerely,

*April Conway*

April Conway
Branch Chief, Europe
Office of Children's Issues
U.S. Central Authority for the Hague Abduction Convention
U.S. Department of State

SBU -PRIVACY OR PII



AB 669433

CERTIFIED COPY OF AN
Pursuant to the

ENTRY OF MARRIAGE    WARNING: A CERTIFICATE IS NOT EVIDENCE OF IDENTITY
Marriage Act 1949    (Printed by the Authority of the Registrar General.)

M. Cert.
S.R./R.B.D.

CAUTION: There are offences relating to falsifying or altering a certificate and using or possessing a false certificate. © Crown copyright.

Registration District    Salford

2002 Marriage solemnized at THE MACHZIKEI HA-DASS SYNAGOGUE 17 NORTHUMBERLAND STREET
in the District of    SALFOR)    in the METROPOLITAN DISTRICT of SALFOR)

| No. | When married | Name and surname | Age | Condition | Rank or profession | Residence at the time of marriage | Father's name and surname | Rank or profession of father |
|---|---|---|---|---|---|---|---|---|
| 43 | 28 FEBRUARY 2002 | HERSCH GROSS | 20 | BACHELOR | STU:)ENT | 10, PARKSIDE AVE SALFOR) M7 | MORTON GROSS | RA)3)1 |
| | | FAIGE LEAH WESTHEIM | 18 | SPINSTER | TEACHER | 15, BROOM LANE SALFOR) M7 | OSHER YAAROUV WESTHEIM | RA))1 |

Married in the MACHZIKEI HA-)ASS SYNAGOGUE according to the usages of the JEWS by CERTIFICATE

This marriage was solemnized between us,

hand gross
F.L. Westheim

in the presence of us,

E. )?2l?.?m
Weinger

C Jay)

X    Deputy Superintendent Registrar    9/5/2022    Date

Certified to be a true copy of an entry in a register in my custody,

 **Official Solicitor**

**International Child Abduction & Contact Unit (ICACU)**

# ICACU APPLICATION FORM

Please read the '**ICACU Guide to making an application**' before completing this form.

Where possible please type the form. You should double check the spelling of foreign names and addresses. If more than one spelling is in use, please provide all alternative spellings.

**Section 1: Please indicate by putting a cross in the appropriate box what type of application you wish to make. Please put a cross in one box ONLY.**

| | |
|---|---|
| **Request for return of the child(ren)** | X |
| **Request for contact with the child(ren)** | |
| **Request for registration and enforcement of an existing court order** | |

**Section 2: Details of the child(ren).**

**Child 1**

| | |
|---|---|
| Surname: | GROSS |
| First Names: | AHRON |
| (Please say if the child is generally known by a name other than their official name) | |
| Date of Birth (dd/mm/yyyy): | 28/10/2009    ✓ Male    Female |
| Country of habitual residence (immediately before removal or retention): | ENGLAND |
| Passport No: | 127389169 |
| Nationality: | BRITISH |
| Dual nationality: | |
| Dual nationality Passport No: | |
| Identity card: | |

| Date of Birth (dd/mm/yyyy): | | Male | | Female |
|---|---|---|---|---|
| Country of habitual residence (immediately before removal or retention): | | | | |
| Passport No: | | | | |
| Nationality: | | | | |
| Dual nationality: | | | | |
| Dual nationality Passport No: | | | | |
| Identity card: | | | | |

## Section 3: Details of parents.

**Parent 1**

| Surname: | GROSS | | |
|---|---|---|---|
| First Names: (Please say if the parent is generally known by a name other than their official name) | FAYGE LEAH | | |
| Date of Birth (dd/mm/yyyy): | | Male | Female ✓ |
| Country of habitual residence: | ENGLAND | | |
| Passport No: | 536595526 | | |
| Nationality: | BRITISH | | |
| Dual nationality: | | | |
| Dual nationality Passport No: | | | |
| Identity card: | | | |
| Occupation | | | |

**Parent 2**

| Surname: | GROSS | | |
|---|---|---|---|
| First Names: (Please say if the parent is generally known by a name other than their official name) | HERSCH | | |
| Date of Birth (dd/mm/yyyy): | 09/07/81 | Male ✓ | Female |

| | |
|---|---|
| Country of habitual residence: | U.S.A. |
| Passport No: | |
| Nationality: | BELGIUM |
| Dual nationality: | |
| Dual nationality Passport No: | |
| Identity card: | |
| Occupation | |

| | |
|---|---|
| Date and place of marriage (if applicable): | 28th Febuary 2002 - SALFORD |
| Date and place of divorce (if applicable): | |
| Date and place of civil partnership or other same sex registered partnership (if applicable): | |
| Date and place of dissolution of civil partnership or other same sex registered partnership (if applicable): | |

**Section 4: Details of requesting individual or institution (complete 4(a) or 4(b) NOT both).**

**4(a): Requesting individual**

| | |
|---|---|
| Surname: | GROSS GROSS |
| First Names: | A HEAR FAYGE LEAH |
| Relationship to child(ren): | MOTHER |
| Contact Address: | |
| Postcode: | M7 4AS |
| Full Telephone Number: | 07391 682 465 |

| (including area code): | |
|---|---|
| Mobile Telephone Number: | 0 73 91  682  465 |
| Email: | FL171722 @ GMAIL. COM |

### 4(b): Requesting institution

| | |
|---|---|
| Institution: | |
| Surname of contact person: | |
| First name of contact person: | |
| Institution's relationship with the child(ren): | |
| Contact Address: | |
| Postcode: | |
| Full Telephone Number (including area code): | |
| Mobile Telephone Number: | |
| Email: | |

**Details of your legal adviser (if any). Please note you should only provide details of a solicitor if you are actually instructing one in relation to this matter.**

| | |
|---|---|
| Name of solicitor: | STEPHEN   J. CULLEN |
| Contact Address: | |
| Full Telephone Number (including area code): | +1 (202) 465- 8374 |
| Fax No: | |
| Email: | SCULLEN @ MilesStockbridge. com |

Please indicate by putting a cross in one of the boxes below whether you wish the ICACU to correspond directly with you or with your solicitor. You should be aware that there could be cost implications for you if we correspond with your solicitor.

| Please only correspond with me | ✗ | Please correspond with my solicitor | |

**Section 5: Details of person alleged to have removed/retained/prevented contact with child(ren) and current location of child(ren).**

| | |
|---|---|
| Surname: | GROSS |
| First Names:<br><br>(Please say if the person is generally known by a name other than their official name) | HERSCH |
| Relationship to child(ren): | FATHER |
| Details of location of child(ren) including any known address in the other country:<br><br>Please provide as much information as possible | Brooklyn New York<br><br>001 929 392 8064<br><br>Heischgross@gmail.com |

| Details of other persons who might be able to supply additional information relating to the location of the child(ren) | MR Y.C. GROSS - 07973 358474<br><br>MR Y.Y. LEU - 07973 167717 |
| --- | --- |

**Section 6: Request for return. You should only complete this section if you are making an application for return of the child(ren).**

### 6(a): Date and circumstances of wrongful removal or retention

Please provide brief details of events leading up to removal or retention of the child(ren) and explain the basis for saying that England or Wales was the country of habitual residence of the child(ren) immediately before the date of the removal or retention. You should list any supporting documents you are sending with the application form in section 10.

As in all devorced settings it is impertive for a cuild to spend time with both parents respectivly, But it would be very important to have a third party Which has never been in place messages always through the children arrangements were made. The child, my son Ahron, has lived with me ever since our seperation, attendeng school here in Salford. The arrangemento now was meant for Ahron to go to his Father for passover. I signed and agreed, even though passover is only 8 days, that from the 6th of April '22 untill 27 April '22, which unfortunatly he was not returned on the designated day.

I shall be attbatcliy our marriage certificate, Ahron birth certificate and his enrollment in school. It was arranged as on a couple of previous occasions were made through his brother living in london. attached are the emails of

**6(b): Factual or legal grounds justifying the request for return of the child(ren)** correspondance

Please provide evidence of your rights of custody with respect to the child(ren).

I feel the rights are mine to have Ahron back as I have had him living here all the time and a a caring mother providing for him 24/7 school fees' extra stuff to help him feel good, about himself and reach potential like woodwork music etc. And he very much needs a mother for his growing years. Mr Gross has made no contributions to Ahrons care or any of his other Children since he left the marital home 5 years ago.

**6(c): Arrangements for the return of the child(ren)**

If applying for return of the child(ren) please confirm you are prepared to travel to the country to which the child(ren) have been taken, both to attend the court hearing if necessary, and to collect the child(ren) should the application be successful or indicate any other person who could do so on your behalf

The designated person I Would like to appoint is Mr Weiss who is very familar with ahron and Family setting

**6(d): Amicable resolution of the issues**

If you have undertaken mediation to try and secure the voluntary return of the child(ren) please give details here. If you have not done so would you like the other parent to be asked about a voluntary return? Would you like to undertake mediation with the other parent if that is an available option?

.

**Section 7: Request for contact.  You should only complete this section if you are making an application for contact with the child(ren) or if you are seeking recognition and/or enforcement of an existing contact order (this could be a contact provision in a child arrangements order).**

**7(a): Circumstances relating to the prevention of contact with the child(ren).**

| Please provide brief details relating to the prevention of the exercise of your rights of contact |
| --- |
| |

**7(b): Proposed arrangements for contact.**

| Please provide your proposal for the contact you would like to have with your child(ren) |
| --- |

**7(c): Amicable resolution of the issues**

If you have undertaken mediation to try and agree contact arrangements please give details here.  If you have not done so would you like to undertake mediation with the other parent if that is an available option?

**Section 8: Request for registration and/or enforcement of a 'parental responsibility' order (other than an order for contact) including a custody order.  You should only complete this section if you are making an application for registration and/or enforcement of a 'parental responsibility' order.**

**8(a): Circumstances relating to the making of the order**

Please provide brief details relating to the making of the order

**8(b): Reasons for seeking enforcement of the order.**

Please only complete if you are seeking enforcement or enforcement immediately after registration. Provide brief details of the alleged breach of the order.

**Section 9: Civil (including family) proceedings that have concluded or are in progress**

In England and Wales (you should attach copies of any court orders which have been made)

<br><br><br><br><br><br><br><br>

**Outside England and Wales**

<br><br><br><br><br><br><br>

If there are proceedings in progress either in or outside England and Wales please give the date of next hearing if known or any other relevant information about the court timetable

<br><br><br><br><br><br><br>

**Section 10: List of documents attached**

You should list here all documents you are sending in support of your application including copies of any relevant court orders, statements or affidavits, and recent colour photographs of the other parent and the child(ren). Please include copies of the child(ren)'s birth certificate and (if you are or have been married or in a civil partnership with the other parent) your marriage or civil partnership certificate (full A4 size copies which include details of both parents) or your divorce or dissolution decree. If you are attaching documents in support of the child's habitual residence in this country you should also list those here.



Child   birth certificate
enroll ment in school
picture of child (passport)
marriage certificate

**Section 11: Applicant's authorisation**

*I authorise the requested Central Authority and its agents to act on my behalf and to do all things reasonable and necessary in connection with this application.*

| | |
|---|---|
| Signature | F. L. eg |
| Full name of applicant (block capitals) | FAYGE  LEAH   GROSS |
| Date (dd/mm/yyyy): | 8/05/22 |







UNITED KINGDOM OF GREAT BRITAIN AND NORTHERN IRELAND
PASSPORT
PASSPORT
Type/Type
P
Code/Code
GBR
Passport No./Passport No.
127389169
Surname/Nom (1)
GROSS
Given names/Prénoms (2)
AHRON
Nationality/Nationalité (3)
BRITISH CITIZEN
Date of birth/Date de naissance (4)
28 OCT /OCT 09
Sex/Sexe (5)
M
Place of birth/Lieu de naissance (6)
MANCHESTER
Date of issue/Date de délivrance (7)
10 NOV /NOV 21
Authority/Autorité (8)
HMPO
Date of expiry/Date d'expiration (9)
10 NOV /NOV 26
P<GBRGROSS<<AHRON<<<<<<<<<<<<<<<<<<<<<<<<<<<
1273891698GBR0910282M2611103<<<<<<<<<<<<<<02
Holder's signature/Signature du titulaire (10)

**fayge gross** <fl171722@gmail.com>                                    Wed, Mar 30, 11:18 AM
to david

Firsty thank you for your help
I hope that moving forward for the sake of the children we can agree proper arrangements for the future
I give permission for Malka Gitty and Arele to spend Pesach with their father and to travel to America from the 12th of April and return on the 25th of April
If I need any expenses to prepare them or buy clothes I would appreciate your help

 

      **David** <david@a1building.co.uk>                                    Wed, Mar :
      to me

      Thanks can u please sign u name on the bottom jost in case the ask him thanks

      Sent from my iPhone

         On Mar 30, 2022, at 11:18 AM, fayge gross <fl171722@gmail.com> wrote:

 

      **fayge gross** <fl171722@gmail.com>                                    Wed, Mar :
      to David

      Firsty thank you for your help
      I hope that moving forward for the sake of the children we can agree proper arrangements for the future
      I give permission for Malka Gitty and Arele to spend Pesach with their father and to travel to America from the 12th of April and return on the 25th of April
      If I need any expenses to prepare them or buy clothes I would appreciate your help

      f l gross

 

      **David** <david@a1building.co.uk>                                    Wed, Mar :
      to me

      Ok thanks is u bank details the same as before ?

 

      **fayge gross** <fl171722@gmail.com>                                    Wed, Mar
      to David

      Yes, that is correct.

n Wed, Mar 30, 2022 at 11:24 AM David <david@a1building.co.uk> wrote:

Thanks can u please sign u name on the bottom jost in case the ask him thanks

Sent from my iPhone

**David** <david@a1building.co.uk>                                                                           Thu, Mar 31, 5:37 PM
to me

as I text please send passport piture attached so he can book this tickets

he spoke to MG she wants to stay for the yourtzait. She is booked going out the 11th returning 20. for Ahreleh  going Wed 6th returning Wed 27th. for ahreleh ticket on hold for a few hours. but  he can only book once he got a copy of passport . please email me ASAP as spaces are very limited this dates .

Sent from my iPhone

On Mar 31, 2022, at 5:23 PM, fayge gross <fl171722@gmail.com> wrote:

Preview attachment 20220331_171658.jpg



20220331_171658.jpg

**David**                                                                                      Mon, Apr 4, 11:21 PM
to me

Sent from my iPhone

Begin forwarded message:

**From:**
**Date:** April 4, 2022 at 8:14:10 PM GMT+1
**To:** David <david@a1building.co.uk>
**Subject: Fwd: Virgin Atlantic Airways e-Ticket - CV48XC**

---------- Forwarded message ---------
From: <booking@virginatlantic.com>
Date: Sun, 3 Apr 2022 at 18:03
Subject: Virgin Atlantic Airways e-Ticket

       My Booking   Travel info   Experience   Flying Club



**LONDON , here you come!**

Thank you for booking with Virgin Atlantic.We look forward to having you on board.

Read our destination guide →

Please check the travel advice for all countries in your itinerary →

## Your Booking Confirmation

Your booking

✈  MAN -
    JFK

**MANCHESTER**                          **NYC-KENNEDY**
( MAN ), GBR                            ( JFK ), USA

**Departing**                           **Arriving**
Sun 10APR at 12:45                      Sun  at 15:40
Terminal 2                              Terminal 4
Flight Number VS127                     Flight Number VS127
Economy Classic ( A )

Operated by VIRGIN ATLANTIC ( VS )

✈  JFK -
    LHR

**NYC-KENNEDY**
( JFK ), USA

**Departing**

Wed 20APR at 18:45

Row 3, Level 4, Terminal 4

Flight Number VS46

Economy Classic ( A )

**LONDON-HEATHROW**
( LHR ), GBR

**Arriving**

Thu 21APR at 6:45

Terminal 3

Flight Number VS46

Operated by VIRGIN ATLANTIC ( VS )

Passengers

Gittel Gross ( Adult )

**DR. SAMUEL LEVENSON**
GMC 3121465
LIMEFIELD MEDICAL PRACTICE
NEWBURY PLACE HEALTH CENTRE
55 RIGBY STREET
SALFORD
M7 4NX
TEL. 0161 983 0251

10 May 2022

To Whom It May Concern

**Re: Ahron  Gross  DOB 28/10/2009  NHS No: 702 764 2018**

█████████████████████████

This is to certify that the above named  is a patient of this Practice. He
registered with the Practice in 2017. He is registered to be habitually living at
the above family address.

Yours sincerely

*Samuel Levenson*
Dr Samuel Levenson

Dr Samuel Levenson
Limefield Medical Practice
Newbury Place Health Centre
████████████████████



**Talmud Torah**
Yetev Lev
**D'Satmar**
Manchester

Tel: 0161 792 9922 | Fax: 0161 792 9933

09 May 2022

## <u>To whom this may concern</u>

This letter confirms that:

**Aron Gross,** DOB 28/Oct/09, of ████████████████ is a student at our school since Oct 2012.

Please contact me if I can be of any further assistance.

Yours Faithfully

S. Wosner
Secretary

Registered In England No: 4859190  Registered Charity No: 1115778  Ofsted Registration Number: 131435

*Status: Prospective version(s) available.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk editorial team to Child Abduction Act 1984. Any changes that have already been made by the team appear in the content and are referenced with annotations. (See end of Document for details)*



# Child Abduction Act 1984

## 1984 CHAPTER 37

### PART I

#### OFFENCES UNDER LAW OF ENGLAND AND WALES

**1      Offence of abduction of child by parent, etc.**

(1) Subject to subsections (5) and (8) below, a person connnected with a child under the age of sixteen commits an offence if he takes or sends the child out of the United Kingdom without the appropriate consent.

[F1(2) A person is connected with a child for the purposes of this section if—

    (a)   he is a parent of the child; or

    (b)   in the case of a child whose parents were not married to each other at the time of his birth, there are reasonable grounds for believing that he is the father of the child; or

    (c)   he is a guardian of the child; or

    (d)   he is a person in whose favour a residence order is in force with respect to the child; or

    (e)   he has custody of the child.

(3) In this section 'the appropriate consent', in relation to a child, means—

    (a)   the consent of each of the following—

        (i) The child's mother;

        (ii) the child's father, if he has parental responsibility for him;

        (iii) any guardian of the child;

        (iv) any person in whose favour a residence order is in force with respect to the child;

        (v) any person who has custody of the child; or

    (b)   the leave of the court granted under or by virtue of any provision of Part II of the Children Act 1989; or

    (c)   if any person has custody of the child, the leave of the court which awarded custody to him.

*Status: Prospective version(s) available.*
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk*
*editorial team to Child Abduction Act 1984. Any changes that have already been made by the*
*team appear in the content and are referenced with annotations. (See end of Document for details)*

(4) A person does not commit an offence under this section by taking or sending a child out of the United Kingdom without obtaining the appropriate consent if—

    (a) he is a person in whose favour there is a residence order in force with respect to the child, and

    (b) he takes or sends him out of the United Kingdom for a period of less than one month.

(4A) Subsection (4) above does not apply if the person taking or sending the child out of the United Kingdom does so in breach of an order under Part II of the Children Act 1989.]

(5) A person does not commit an offence under this section by doing anything without the consent of another person whose consent is required under the foregoing provisions if—

    (a) he does it in the belief that the other person—

        (i) has consented; or

        (ii) would consent if he was aware of all the relevant circumstances; or

    (b) he has taken all reasonable steps to communicate with the other person but has been unable to communicate with him; or

    (c) the other person has unreasonably refused to consent,

[F2(5A) Subsection (5)(c) above does not apply if—

    (a) the person who refused to consent is a person—

        (i) in whose favour there is a residence order in force with respect to the child; or

        (ii) who has custody of the child; or

    (b) the person taking or sending the child out of the United Kingdom is, by so acting, in breach of an order made by a court in the United Kingdom.]

(6) Where, in proceedings for an offence under this section, there is sufficent evidence to raise an issue as to the application of subsection (5) above, it shall be for the prosecution to prove that that subsection does not apply.

[F3(7) For the purposes of this section—

    (a) "guardian of a child", "residence order" and "parental responsibility" have the same meaning as in the Children Act 1989; and

    (b) a person shall be treated as having custody of a child if there is in force an order of a court in the United Kingdom awarding him (whether solely or jointly with another person) custody, legal custody or care and control of the child.]

(8) This section shall have effect subject to the provisions of the Schedule to this Act in relation to a child who is in the care of a local authority [F4detained in a place of safety, remanded to a local authority accommodation or the subject of] proceedings or an order relating to adoption.

**Annotations:**

**Amendments (Textual)**

**F1**    S. 1(2)–(4)(4A) substituted (14.10.1991) for subsections (2)–(4) of section 1 by Children Act 1989 (c. 41, SIF 20), s. 108(4), Sch. 12 para. 37(2) (with Sch. 14 para. 1(1)); S.I. 1991/828, art. 3(2)

**F2**    S. 1(5A) substituted (14.10.1991) by Children Act 1989 (c. 41, SIF 20), s. 108(4), Sch. 12 para. 37(3) (with sch. 14 para. 1(1)); S.I. 1991/828, art. 3(2)

***Status: Prospective version(s) available.***
*Changes to legislation: There are outstanding changes not yet made by the legislation.gov.uk
editorial team to Child Abduction Act 1984. Any changes that have already been made by the
team appear in the content and are referenced with annotations. (See end of Document for details)*

F3    S. 1(7) substituted (14.10.1991) by Children Act 1989 (c. 41. SIF 20), s. 108(4), Sch. 12 para. 37(4) (with Sch. 14 para. 1(1)): S.I. 1991/828, art. 3(2)

F4    Words in s. 1(8) substituted (14.10.1991) by Children Act 1989 (c. 41. SIF 20), s. 108(4), Sch. 12 para. 37(5) (with Sch. 14 para. 1(1)); S.I. 1991/828, art. 3(2)

4

---

**Status:**
Prospective version(s) available.

---

**Changes to legislation:**
There are outstanding changes not yet made by the legislation.gov.uk editorial team to Child Abduction Act 1984. Any changes that have already been made by the team appear in the content and are referenced with annotations.

---

**Changes and effects yet to be applied to :**
- s. 1(2)(d) words substituted by 2014 c. 6 Sch. 2 para. 47(2)
- s. 1(3)(a)(iv) substituted by 2014 c. 6 Sch. 2 para. 47(3)
- s. 1(4)(a) words substituted by 2014 c. 6 Sch. 2 para. 47(4)
- s. 1(5A)(a)(i) substituted by 2014 c. 6 Sch. 2 para. 47(5)
- s. 1(7)(a) words substituted by 2014 c. 6 Sch. 2 para. 47(6)
- s. 1(8) words substituted by 2012 c. 10 Sch. 12 para. 19

---

**Commencement Orders yet to be applied to the Child Abduction Act 1984**
Commencement Orders bringing legislation that affects this Act into force:
- S.I. 2004/786 art. 2 3 commences (2003 c. 32)
- S.I. 2005/2213 art. 2 3 commences (2002 c. 38)
- S.I. 2005/2897 art. 2 commences (2002 c. 38)
- S.I. 2009/3074 art. 2 3 commences (2008 c. 4)
- S.I. 2010/507 art. 2-5 commences (2009 c. 26)

*Changes to legislation: Children Act 1989. Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*



# Children Act 1989

## 1989 CHAPTER 41

## PART I

### INTRODUCTORY

**1    Welfare of the child.**

(1) When a court determines any question with respect to—

    (a)   the upbringing of a child; or

    (b)   the administration of a child's property or the application of any income arising from it,

the child's welfare shall be the court's paramount consideration.

(2) In any proceedings in which any question with respect to the upbringing of a child arises, the court shall have regard to the general principle that any delay in determining the question is likely to prejudice the welfare of the child.

[F1(2A) A court, in the circumstances mentioned in subsection (4)(a) or (7), is as respects each parent within subsection (6)(a) to presume, unless the contrary is shown, that involvement of that parent in the life of the child concerned will further the child's welfare.

(2B) In subsection (2A) "involvement" means involvement of some kind, either direct or indirect, but not any particular division of a child's time.]

(3) In the circumstances mentioned in subsection (4), a court shall have regard in particular to—

    (a)   the ascertainable wishes and feelings of the child concerned (considered in the light of his age and understanding);

    (b)   his physical, emotional and educational needs;

    (c)   the likely effect on him of any change in his circumstances;

    (d)   his age, sex, background and any characteristics of his which the court considers relevant;

    (e)   any harm which he has suffered or is at risk of suffering;

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

    (f)   how capable each of his parents, and any other person in relation to whom the court considers the question to be relevant, is of meeting his needs;

    (g)   the range of powers available to the court under this Act in the proceedings in question.

(4) The circumstances are that—

    (a)   the court is considering whether to make, vary or discharge a section 8 order, and the making, variation or discharge of the order is opposed by any party to the proceedings; or

    (b)   the court is considering whether to make, vary or discharge [**F2**a special guardianship order or] an order under Part IV.

(5) Where a court is considering whether or not to make one or more orders under this Act with respect to a child, it shall not make the order or any of the orders unless it considers that doing so would be better for the child than making no order at all.

[**F3**(6) In subsection (2A) "parent" means parent of the child concerned; and, for the purposes of that subsection, a parent of the child concerned—

    (a)   is within this paragraph if that parent can be involved in the child's life in a way that does not put the child at risk of suffering harm; and

    (b)   is to be treated as being within paragraph (a) unless there is some evidence before the court in the particular proceedings to suggest that involvement of that parent in the child's life would put the child at risk of suffering harm whatever the form of the involvement.

(7) The circumstances referred to are that the court is considering whether to make an order under section 4(1)(c) or (2A) or 4ZA(1)(c) or (5) (parental responsibility of parent other than mother).]

---

**Annotations:**

**Amendments (Textual)**

**F1**   S. 1(2A)(2B) inserted (22.10.2014) by Children and Families Act 2014 (c. 6), **ss. 11(2)**, 139(6); S.I. 2014/2749, art. 3 (with art. 4)

**F2**   Words in s. 1(4)(b) inserted (30.12.2005) by 2002 c. 38, ss. 115(3), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F3**   S. 1(6)(7) inserted (22.10.2014) by Children and Families Act 2014 (c. 6), **ss. 11(3)**, 139(6); S.I. 2014/2749, art. 3 (with art. 4)

**Modifications etc. (not altering text)**

**C1**   S. 1(2)(3)(a)-(f) applied with modifications (14. 10. 1991) by S.I. 1991/1395, r. 11(1) (as amended (8.12.2008) by The Family Proceedings Courts (Children Act 1989) (Amendment) Rules 2008, (S.I. 2008/2858), {rule 7})

**Commencement Information**

**I1**   S. 1 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

---

**2**    **Parental responsibility for children.**

(1) Where a child's father and mother were married to each other at the time of his birth, they shall each have parental responsibility for the child.

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

[F4(1A) Where a child—

    (a)    has a parent by virtue of section 42 of the Human Fertilisation and Embryology Act 2008; or

    (b)    has a parent by virtue of section 43 of that Act and is a person to whom section 1(3) of the Family Law Reform Act 1987 applies,

the child's mother and the other parent shall each have parental responsibility for the child.

(2) Where a child's father and mother were not married to each other at the time of his birth—

    (a)    the mother shall have parental responsibility for the child;

    (b)    the father [F5shall have parental responsibility for the child if he has acquired it (and has not ceased to have it)] in accordance with the provisions of this Act.]

[F6(2A) Where a child has a parent by virtue of section 43 of the Human Fertilisation and Embryology Act 2008 and is not a person to whom section 1(3) of the Family Law Reform Act 1987 applies—

    (a)    the mother shall have parental responsibility for the child;

    (b)    the other parent shall have parental responsibility for the child if she has acquired it (and has not ceased to have it) in accordance with the provisions of this Act.]

(3) References in this Act to a child whose father and mother were, or (as the case may be) were not, married to each other at the time of his birth must be read with section 1 of the M1Family Law Reform Act 1987 (which extends their meaning).

(4) The rule of law that a father is the natural guardian of his legitimate child is abolished.

(5) More than one person may have parental responsibility for the same child at the same time.

(6) A person who has parental responsibility for a child at any time shall not cease to have that responsibility solely because some other person subsequently acquires parental responsibility for the child.

(7) Where more than one person has parental responsibility for a child, each of them may act alone and without the other (or others) in meeting that responsibility; but nothing in this Part shall be taken to affect the operation of any enactment which requires the consent of more than one person in a matter affecting the child.

(8) The fact that a person has parental responsibility for a child shall not entitle him to act in any way which would be incompatible with any order made with respect to the child under this Act.

(9) A person who has parental responsibility for a child may not surrender or transfer any part of that responsibility to another but may arrange for some or all of it to be met by one or more persons acting on his behalf.

(10) The person with whom any such arrangement is made may himself be a person who already has parental responsibility for the child concerned.

(11) The making of any such arrangement shall not affect any liability of the person making it which may arise from any failure to meet any part of his parental responsibility for the child concerned.

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

---

**Annotations:**

**Amendments (Textual)**

**F4**    S. 2(1A) inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 26(2)**; S.I. 2009/479, **art. 6(1)(e)**

**F5**    Words in s. 2(2) substituted (1.12.2003) by 2002 c. 38, ss. 111(5), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**F6**    S. 2(2A) inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 26(3)**; S.I. 2009/479, **art. 6(1)(e)**

**Commencement Information**

**I2**    S. 2 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

**Marginal Citations**

**M1**    1987 c. 42.

---

**3    Meaning of "parental responsibility".**

(1) In this Act "parental responsibility" means all the rights, duties, powers, responsibilities and authority which by law a parent of a child has in relation to the child and his property.

(2) It also includes the rights, powers and duties which a guardian of the child's estate (appointed, before the commencement of section 5, to act generally) would have had in relation to the child and his property.

(3) The rights referred to in subsection (2) include, in particular, the right of the guardian to receive or recover in his own name, for the benefit of the child, property of whatever description and wherever situated which the child is entitled to receive or recover.

(4) The fact that a person has, or does not have, parental responsibility for a child shall not affect—

    (a)    any obligation which he may have in relation to the child (such as a statutory duty to maintain the child); or

    (b)    any rights which, in the event of the child's death, he (or any other person) may have in relation to the child's property.

(5) A person who—

    (a)    does not have parental responsibility for a particular child; but

    (b)    has care of the child,

may (subject to the provisions of this Act) do what is reasonable in all the circumstances of the case for the purpose of safeguarding or promoting the child's welfare.

---

**Annotations:**

**Commencement Information**

**I3**    S. 3 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

**4**      **Acquisition of parental responsibility by father.**

(1) Where a child's father and mother were not married to each other at the time of his birth [**F7**, the father shall acquire parental responsibility for the child if—
  (a)   he becomes registered as the child's father under any of the enactments specified in subsection (1A);
  (b)   he and the child's mother make an agreement (a "parental responsibility agreement") providing for him to have parental responsibility for the child; or
  (c)   the court, on his application, orders that he shall have parental responsibility for the child.]

[**F8**(1A) The enactments referred to in subsection (1)(a) are—
  (a)   paragraphs (a), (b) and (c) of section 10(1) and of section 10A(1) of the Births and Deaths Registration Act 1953;
  (b)   paragraphs (a), (b)(i) and (c) of section 18(1), and sections 18(2)(b) and 20(1)(a) of the Registration of Births, Deaths and Marriages (Scotland) Act 1965; and
  (c)   sub-paragraphs (a), (b) and (c) of Article 14(3) of the Births and Deaths Registration (Northern Ireland) Order 1976.

(1B) The [**F9**Secretary of State] may by order amend subsection (1A) so as to add further enactments to the list in that subsection.]

(2) No parental responsibility agreement shall have effect for the purposes of this Act unless—
  (a)   it is made in the form prescribed by regulations made by the Lord Chancellor; and
  (b)   where regulations are made by the Lord Chancellor prescribing the manner in which such agreements must be recorded, it is recorded in the prescribed manner.

[**F10**(2A) A person who has acquired parental responsibility under subsection (1) shall cease to have that responsibility only if the court so orders.

(3) The court may make an order under subsection (2A) on the application—
  (a)   of any person who has parental responsibility for the child; or
  (b)   with the leave of the court, of the child himself,

subject, in the case of parental responsibility acquired under subsection (1)(c), to section 12(4).]

(4) The court may only grant leave under subsection (3)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.

---

**Annotations:**

**Amendments (Textual)**
  **F7**   Words in s. 4(1) substituted (1.12.2003) by 2002 c. 38, ss. 111(2), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**
  **F8**   S. 4(1A)(1B) inserted (1.12.2003) by 2002 c. 38, ss. 111(3), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**
  **F9**   Words in s. 4(1B) substituted (12.1.2004) by The Transfer of Functions (Children, Young People and Families) Order 2003 (S.I. 2003/3191), art. 6, **Sch. para. 1**

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

---

**F10** S. 4(2A)(3) substituted (1.12.2003) for s. 4(3) by 2002 c. 38, ss. 111(4), 148 (with Sch. 4 paras. 6-8); S.I. 2003/3079, **art. 2(2)(a)**

**Modifications etc. (not altering text)**
**C2** S. 4(1B): transfer of functions (12.1.2004) by The Transfer of Functions (Children, Young People and Families) Order 2003 (S.I. 2003/3191), **arts. 3(a)**, 4

**Commencement Information**
**I4** S. 4 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

---

## [^F11^4ZA  Acquisition of parental responsibility by second female parent

(1) Where a child has a parent by virtue of section 43 of the Human Fertilisation and Embryology Act 2008 and is not a person to whom section 1(3) of the Family Law Reform Act 1987 applies, that parent shall acquire parental responsibility for the child if—

    (a) she becomes registered as a parent of the child under any of the enactments specified in subsection (2);

    (b) she and the child's mother make an agreement providing for her to have parental responsibility for the child; or

    (c) the court, on her application, orders that she shall have parental responsibility for the child.

(2) The enactments referred to in subsection (1)(a) are—

    (a) paragraphs (a), (b) and (c) of section 10(1B) and of section 10A(1B) of the Births and Deaths Registration Act 1953;

    (b) paragraphs (a), (b) and (d) of section 18B(1) and sections 18B(3)(a) and 20(1)(a) of the Registration of Births, Deaths and Marriages (Scotland) Act 1965; and

    (c) sub-paragraphs (a), (b) and (c) of Article 14ZA(3) of the Births and Deaths Registration (Northern Ireland) Order 1976.

(3) The Secretary of State may by order amend subsection (2) so as to add further enactments to the list in that subsection.

(4) An agreement under subsection (1)(b) is also a "parental responsibility agreement", and section 4(2) applies in relation to such an agreement as it applies in relation to parental responsibility agreements under section 4.

(5) A person who has acquired parental responsibility under subsection (1) shall cease to have that responsibility only if the court so orders.

(6) The court may make an order under subsection (5) on the application—

    (a) of any person who has parental responsibility for the child; or

    (b) with the leave of the court, of the child himself,

subject, in the case of parental responsibility acquired under subsection (1)(c), to section 12(4).

(7) The court may only grant leave under subsection (6)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.]

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

---

**Annotations:**

**Amendments (Textual)**

**F11**   S. 4ZA inserted (6.4.2009) by Human Fertilisation and Embryology Act 2008 (c. 22), ss. 56, 68, **Sch. 6 para. 27**; S.I. 2009/479, **art. 6(1)(e)**

---

## [**F12**4A   Acquisition of parental responsibility by step-parent

(1) Where a child's parent ("parent A") who has parental responsibility for the child is married to [**F13**, or a civil partner of,] a person who is not the child's parent ("the step-parent")—

    (a) parent A or, if the other parent of the child also has parental responsibility for the child, both parents may by agreement with the step-parent provide for the step-parent to have parental responsibility for the child; or

    (b) the court may, on the application of the step-parent, order that the step-parent shall have parental responsibility for the child.

(2) An agreement under subsection (1)(a) is also a "parental responsibility agreement", and section 4(2) applies in relation to such agreements as it applies in relation to parental responsibility agreements under section 4.

(3) A parental responsibility agreement under subsection (1)(a), or an order under subsection (1)(b), may only be brought to an end by an order of the court made on the application—

    (a) of any person who has parental responsibility for the child; or

    (b) with the leave of the court, of the child himself.

(4) The court may only grant leave under subsection (3)(b) if it is satisfied that the child has sufficient understanding to make the proposed application.]

---

**Annotations:**

**Amendments (Textual)**

**F12**   S. 4A inserted (30.12.2005) by 2002 c. 38, ss. 112, 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F13**   Words in s. 4A(1) inserted (30.12.2005) by Civil Partnership Act 2004 (c. 33), **s. 75(2)**; S.I. 2005/3175, **art. 2(9)**

---

## 5   Appointment of guardians.

(1) Where an application with respect to a child is made to the court by any individual, the court may by order appoint that individual to be the child's guardian if—

    (a) the child has no parent with parental responsibility for him; or

    (b) a [**F14**parent, guardian or special guardian of the child's was named in a child arrangements order as a person with whom the child was to live and] has died while the order was in force [**F15**; or

    (c) paragraph (b) does not apply, and the child's only or last surviving special guardian dies.]

8

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or*
*before 24 January 2018. There are changes that may be brought into force at a future date. Changes that*
*have been made appear in the content and are referenced with annotations. (See end of Document for details)*

(2) The power conferred by subsection (1) may also be exercised in any family proceedings if the court considers that the order should be made even though no application has been made for it.

(3) A parent who has parental responsibility for his child may appoint another individual to be the child's guardian in the event of his death.

(4) A guardian of a child may appoint another individual to take his place as the child's guardian in the event of his death [$^{F16}$; and a special guardian of a child may appoint another individual to be the child's guardian in the event of his death].

(5) An appointment under subsection (3) or (4) shall not have effect unless it is made in writing, is dated and is signed by the person making the appointment or—

    (a) in the case of an appointment made by a will which is not signed by the testator, is signed at the direction of the testator in accordance with the requirements of section 9 of the $^{M2}$Wills Act 1837; or

    (b) in any other case, is signed at the direction of the person making the appointment, in his presence and in the presence of two witnesses who each attest the signature.

(6) A person appointed as a child's guardian under this section shall have parental responsibility for the child concerned.

(7) Where—

    (a) on the death of any person making an appointment under subsection (3) or (4), the child concerned has no parent with parental responsibility for him; or

    (b) immediately before the death of any person making such an appointment, a [$^{F17}$child arrangements order was in force in which the person was named as a person with whom the child was to live or the person][$^{F18}$was the child's only (or last surviving) special guardian],

the appointment shall take effect on the death of that person.

(8) Where, on the death of any person making an appointment under subsection (3) or (4)—

    (a) the child concerned has a parent with parental responsibility for him; and

    (b) subsection (7)(b) does not apply,

the appointment shall take effect when the child no longer has a parent who has parental responsibility for him.

(9) Subsections (1) and (7) do not apply if the [$^{F19}$child arrangements] order referred to in paragraph (b) of those subsections [$^{F20}$also named] a surviving parent of the child [$^{F21}$as a person with whom the child was to live].

(10) Nothing in this section shall be taken to prevent an appointment under subsection (3) or (4) being made by two or more persons acting jointly.

(11) Subject to any provision made by rules of court, no court shall exercise the High Court's inherent jurisdiction to appoint a guardian of the estate of any child.

(12) Where rules of court are made under subsection (11) they may prescribe the circumstances in which, and conditions subject to which, an appointment of such a guardian may be made.

*Changes to legislation: Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)*

(13) A guardian of a child may only be appointed in accordance with the provisions of this section.

---

**Annotations:**

**Amendments (Textual)**

**F14**   Words in s. 5(1)(b) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(2)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F15**   S. 5(1)(c) and preceding word inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(a)(ii), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F16**   Words in s. 5(4) inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(b), 148 (with Sch. 4 paras. 6-8); S.I. 2005/3213, **art. 2(k)**

**F17**   Words in s. 5(7)(b) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(3)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F18**   Words in s. 5(7) inserted (30.12.2005) by 2002 c. 38, ss. 115(4)(c), 148 (with Sch. 4 paras. 6-8); S.I. 2005/2213, **art. 2(k)**

**F19**   Words in s. 5(9) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(a)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F20**   Words in s. 5(9) substituted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(b)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**F21**   Words in s. 5(9) inserted (22.4.2014) by Children and Families Act 2014 (c. 6), s. 139(6), **Sch. 2 para. 2(4)(c)**; S.I. 2014/889, art. 4(f) (with transitional provisions in S.I. 2014/1042, arts. 3, 4, 6-10)

**Commencement Information**

**I5**   S. 5 except s. 5(11)(12) in force at 14.10.1991 by S.I. 1991/828, **art. 3(2)** and s. 5(11)(12) wholly in force 1.2.1992 by S.I. 1991/828, **art. 3** as amended by S.I. 1991/1990, **art. 2**.

**Marginal Citations**

**M2**   1837 c. 26.

---

**6**   **Guardians: revocation and disclaimer.**

(1) An appointment under section 5(3) or (4) revokes an earlier such appointment (including one made in an unrevoked will or codicil) made by the same person in respect of the same child, unless it is clear (whether as the result of an express provision in the later appointment or by any necessary implication) that the purpose of the later appointment is to appoint an additional guardian.

(2) An appointment under section 5(3) or (4) (including one made in an unrevoked will or codicil) is revoked if the person who made the appointment revokes it by a written and dated instrument which is signed—

    (a) by him; or

    (b) at his direction, in his presence and in the presence of two witnesses who each attest the signature.

(3) An appointment under section 5(3) or (4) (other than one made in a will or codicil) is revoked if, with the intention of revoking the appointment, the person who made it—

    (a) destroys the instrument by which it was made; or

    (b) has some other person destroy that instrument in his presence.

*Changes to legislation:* Children Act 1989, Part I is up to date with all changes known to be in force on or before 24 January 2018. There are changes that may be brought into force at a future date. Changes that have been made appear in the content and are referenced with annotations. (See end of Document for details)

[F22(3A) An appointment under section 5(3) or (4) (including one made in an unrevoked will or codicil) is revoked if the person appointed is the spouse of the person who made the appointment and either—

  (a)   a decree of a court of civil jurisdiction in England and Wales dissolves or annuls the marriage, or

  (b)   the marriage is dissolved or annulled and the divorce or annulment is entitled to recognition in England and Wales by virtue of Part II of the Family Law Act 1986,

unless a contrary intention appears by the appointment.]

[F23(3B) An appointment under section 5(3) or (4)(including one made in an unrevoked will or codicil) is revoked if the person appointed is the civil partner of the person who made the appointment and either—

  (a)   an order of a court of civil jurisdiction in England and Wales dissolves or annuls the civil partnership, or

  (b)   the civil partnership is dissolved or annulled and the dissolution or annulment is entitled to recognition in England and Wales by virtue of Chapter 3 of Part 5 of the Civil Partnership Act 2004,

unless a contrary intention appears by the appointment.]

(4) For the avoidance of doubt, an appointment under section 5(3) or (4) made in a will or codicil is revoked if the will or codicil is revoked.

(5) A person who is appointed as a guardian under section 5(3) or (4) may disclaim his appointment by an instrument in writing signed by him and made within a reasonable time of his first knowing that the appointment has taken effect.

(6) Where regulations are made by the Lord Chancellor prescribing the manner in which such disclaimers must be recorded, no such disclaimer shall have effect unless it is recorded in the prescribed manner.

(7) Any appointment of a guardian under section 5 may be brought to an end at any time by order of the court—

  (a)   on the application of any person who has parental responsibility for the child;

  (b)   on the application of the child concerned, with leave of the court; or

  (c)   in any family proceedings, if the court considers that it should be brought to an end even though no application has been made.

---

**Annotations:**

**Amendments (Textual)**

F22   S. 6(3A) inserted (8.11.1995 with effect as mentioned in s. 4(2) of the amending Act) ) by 1995 c. 41, ss. 4(1)(2)

F23   S. 6(3B) inserted (5.12.2005) by Civil Partnership Act 2004 (c. 33), s. 76; S.I. 2005/3175, art. 2(1), Sch. 1

**Commencement Information**

I6   S. 6 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, art. 3(2)

*Children Act 1989 (c. 41)*
*Part I – Introductory*
*Document Generated: 2018-01-24*

11

***Changes to legislation:*** *Children Act 1989, Part I is up to date with all changes known to be in force on or*
*before 24 January 2018. There are changes that may be brought into force at a future date. Changes that*
*have been made appear in the content and are referenced with annotations. (See end of Document for details)*

**7       Welfare reports.**

(1) A court considering any question with respect to a child under this Act may—

(a)   ask [**F24**an officer of the Service][**F25**or a Welsh family proceedings officer] ; or

(b)   ask a local authority to arrange for—

(i) an officer of the authority; or

(ii) such other person (other than [**F24**an officer of the Service][**F25**or a Welsh family proceedings officer] ) as the authority considers appropriate,

to report to the court on such matters relating to the welfare of that child as are required to be dealt with in the report.

(2) The Lord Chancellor may [**F26**, after consulting the Lord Chief Justice,] make regulations specifying matters which, unless the court orders otherwise, must be dealt with in any report under this section.

(3) The report may be made in writing, or orally, as the court requires.

(4) Regardless of any enactment or rule of law which would otherwise prevent it from doing so, the court may take account of—

(a)   any statement contained in the report; and

(b)   any evidence given in respect of the matters referred to in the report,

in so far as the statement or evidence is, in the opinion of the court, relevant to the question which it is considering.

(5) It shall be the duty of the authority or [**F24**officer of the Service][**F25**or a Welsh family proceedings officer] to comply with any request for a report under this section.

[**F27**(6) The Lord Chief Justice may nominate a judicial office holder (as defined in section 109(4) of the Constitutional Reform Act 2005) to exercise his functions under subsection (2).]

---

**Annotations:**

**Amendments (Textual)**

**F24**   Words in s. 7(1)(a)(b)(ii)(5) substituted (1.4.2001) by 2000 c. 43, s. 74, **Sch. 7 Pt. II para. 88(a)(b)**; S.I. 2001/919, **art. 2(f)(ii)**

**F25**   Words in s. 7(1)(a)(b)(ii)(5) inserted (1.4.2005) by Children Act 2004 (c. 31), s. 40, **Sch. 3 para. 6**; S.I. 2005/700, **art. 2(2)**

**F26**   Words in s. 7(2) inserted (3.4.2006) by Constitutional Reform Act 2005 (c. 4). s. 15(1), {Sch. 4 para. 204(2)}; S.I. 2006/1014, **art. 2(a)**, Sch. 1 para. 11(r)

**F27**   S. 7(6) inserted (3.4.2006) by Constitutional Reform Act 2005 (c. 4). s. 15(1), {Sch. 4 para. 204(3)}; S.I. 2006/1014, **art. 2(a)**, Sch. 1 para. 11(r)

**Commencement Information**

**I7**   S. 7 wholly in force at 14.10.1991 see s. 108(2)(3) and S.I. 1991/828, **art. 3(2)**

**Changes to legislation:**
Children Act 1989, Part I is up to date with all changes known to be in force on or before 24
January 2018. There are changes that may be brought into force at a future date. Changes that
have been made appear in the content and are referenced with annotations.

**Changes and effects yet to be applied to the whole Act associated Parts and Chapters:**
Whole provisions yet to be inserted into this Act (including any effects on those
provisions):

–    s. 4(1A)(aa) inserted by 2009 c. 24 Sch. 6 para. 21(3)
–    s. 4(1C) inserted by 2009 c. 24 Sch. 6 para. 21(4)
–    s. 4ZA(2)(aa) inserted by 2009 c. 24 Sch. 6 para. 22(3)
–    s. 4ZA(3A) inserted by 2009 c. 24 Sch. 6 para. 22(4)
–    s. 23D(3)(4) inserted by 2017 c. 16 s. 3(4)
–    s. 23E(1)(aa) inserted by 2017 c. 16 s. 3(6)
–    s. 23E(1ZA) inserted by 2017 c. 16 s. 3(7)
–    s. 23CZB inserted by 2017 c. 16 s. 3(2)
–    s. 23ZZA and cross-heading inserted by 2017 c. 16 s. 4
–    s. 31A(4A) inserted by 2014 c. 6 s. 15(2)(b)

CERTIFIED COPY OF AN ENTRY
Pursuant to the Births and Deaths Registration Act 1953

BCK 791468

**BIRTH** — Entry No. 115

Registration district Manchester
Sub-district Manchester
Administrative area Metropolitan District of Manchester

**CHILD**

1. Date and place of birth
Twenty-eighth October 2009
St Mary's Hospital, Whitworth Park

2. Name and surname
Ahron GROSS

3. Sex
Male

**FATHER**

4. Name and surname
Hersch GROSS

5. Place of birth
Antwerp, Belgium

6. Occupation
Primary School Teacher

**MOTHER**

7. Name and surname
Fayge Leah GROSS

8.(a) Place of birth
Manchester

8.(b) Occupation
Housewife

9.(a) Maiden surname
WESTHEIM

9.(b) Surname at marriage if different from maiden surname

10. Usual address (if different from place of child's birth)
17 Leicester Road, Salford

**INFORMANT**

11. Name and surname (if not the mother or father)

12. Qualification
Father

13. Usual address (if different from that in 10 above)

14. I certify that the particulars entered above are true to the best of my knowledge and belief
H Gross
Signature of informant

15. Date of registration
Tenth November 2009

16. Signature of registrar
P K Hamilton
Deputy Registrar

17. Name given after registration, and surname

Certified to be a true copy of an entry in a register in my custody.
[signature] { Deputy *Superintendent Registrar *Registrar
Date 11th May 2022
*Strike out whichever does not apply

CAUTION: THERE ARE OFFENCES RELATING TO FALSIFYING OR ALTERING A CERTIFICATE AND USING OR POSSESSING A FALSE CERTIFICATE. ©CROWN COPYRIGHT